O

# United States District Court
# Central District of California

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JAMES DEVON PUGH,

    Defendant.

Case № 2:21-cr-00451-ODW

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [26]**

## I. INTRODUCTION

On September 24, 2021, a federal grand jury charged Defendant James Devon Pugh with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Pugh now moves to dismiss the Indictment on the basis that Section 922(g)(1) is unconstitutional under the Second Amendment to the United States Constitution. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 26.) For the reasons below, the Court **DENIES** Defendant's Motion.

## II. BACKGROUND

On February 6, 2017, in a previous case, Pugh was convicted in the Superior Court of the State of California, County of Orange, of First Degree Residential Burglary in violation of California Penal Code Sections 459-460(a), a felony crime

punishable by a term of imprisonment exceeding one year. (Indictment 1, ECF No. 1.)

Pugh is now charged with a violation of 18 U.S.C. § 922(g)(1), possession of a firearm with knowledge of a prior felony conviction. (*Id.*) Specifically, Pugh is charged with the possession of a Springfield, model XD9, 9mm semi-automatic pistol. (*Id.*) Pugh now moves to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b). (Mot.)

### III.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) allows a pretrial motion to dismiss an offense "that the court can determine without trial on the merits." Fed. R. Crim. P. 12(b)(1). In ruling on a Rule 12(b) motion, "the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.* Such a motion "cannot be used as a device for a summary trial of the evidence. . . . The Court should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (alteration in original) (quoting *United States v. Marra*, 481 F.2d 1196, 1199–1200 (6th Cir. 1973)).

### IV.   DISCUSSION

Pugh argues that the Court should dismiss the Indictment because Section 922(g)(1), both on its face and as applied to him, violates the Second Amendment. (Mot. 2.) Specifically, Pugh contends that Section 922(g)(1) is unconstitutional under the text, history, and tradition test established by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (*Id.*)

**A.   Second Amendment Jurisprudence**

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST.

amend. II. The Supreme Court has held that the Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010)).

However, "the right secured by the Second Amendment is not unlimited," but it is reserved for "law-abiding, responsible citizens." *Heller*, 554 U.S. at 626, 635. For example, the Court in *Heller* was explicit in stating that nothing in the opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626–27; *see also McDonald*, 561 U.S. at 786 ("[O]ur holding [in *Heller*] did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" (quoting *Heller*, 554 U.S. at 626)).

Since *Heller* and *McDonald*, "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 597 U.S. at 17. However, in *Bruen*, the Supreme Court rejected the means-end scrutiny analysis included in the second step of the framework. *Id.* at 17, 19, 31. The Court explained that, despite the means-end test being "broadly consistent with *Heller*," the two-step framework was "one step too many." *Id.* at 19. Rather, when dealing with issues regarding the Second Amendment, courts should instead focus their analysis strictly on history.

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct . . . . The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17–24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). The Supreme Court clarified that analogical reasoning under the Second Amendment is "neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 597 U.S.

at 30.  "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."  *Id.*

**B.      The Constitutionality of the Felon-in-Possession Statute**

Pugh argues that *Bruen*'s rejection of the means-end test in finding that New York's "may-issue" licensing regime violated the Second Amendment renders Section 922(g)(1) similarly unconstitutional.  (Mot. 2.)

Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court[] of a [felony] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

The Ninth Circuit considered the constitutionality of the felon-in-possession statute in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010).  There, the defendant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), based upon three "non-violent felony convictions."  *Vongxay*, 594 F.3d at 1114.  The court held that "[Section] 922(g)(1) does not violate the Second Amendment as it applies to Vongxay, a convicted felon."  *Id.* at 1118.  The Ninth Circuit based its conclusion on the fact that "felons are categorically different from the individuals who have a fundamental right to bear arms."  *Id.* at 1115.

In *Bruen*, a decision issued approximately ten years after *Vongxay*, the Supreme Court considered the constitutionality of a law restricting the ability of "ordinary, law-abiding citizens" to carry handguns for self-defense.  *Bruen*, 597 U.S. at 9.  At the opinion's outset, the Court limited its holding by noting that "petitioners . . . are law-abiding, adult citizens."  *Id.* at 15.  The Court also repeatedly referred to the regulation in question as one that "burden[ed] a law-abiding citizen's right to armed self-defense."  *See, e.g., id.* at 29.

As further evidence of the Supreme Court's intent to limit *Bruen*'s holding to law-abiding citizens, the Court clarified that, in contrast to the may-issue licensing regimes at issue, "shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Bruen*, 594 U.S. at 1, 38 n.9 (quoting *Heller*, 554 U.S. at 635). As such, because "shall-issue" programs were intended only to ensure that those bearing arms in the jurisdiction are "law-abiding, responsible citizens," "nothing in [the Court's] analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes." *Id.*; *see also id.* at 80 (Kavanaugh, J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible.")

Furthermore, in a two-Justice concurrence,[1] Justice Kavanaugh and Chief Justice Roberts sought to "underscore two important points about the limits of the Court's decision." *Id.* at 79 (Kavanaugh, J., concurring). Justice Kavanaugh clarifies that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id.* at 80 (quoting *Heller*, 554 U.S. at 636). To avoid any potential confusion, the Justices explicitly excerpted the language from *Heller* stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 81 (quoting *Heller*, 554 U.S. at 626–27).

Turning now to Defendant's argument, Pugh argues that this Court, in light of the Supreme Court's reasoning in *Bruen*, should not follow the Ninth Circuit's holding in *Vongxay* that Section 922 is constitutional as applied to felons. (Mot. 4 ("'[W]here intervening Supreme Court authority is *clearly irreconcilable*' with prior Ninth Circuit authority, 'district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.'" (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc),

---

[1] The majority opinion in *Bruen* consisted of six Justices, so without these two concurring Justices there would have been no majority.

*overruled on other grounds*, *Sanchez v. Mayorkas*, 593 U.S. 409 (2021))).) Specifically, Pugh contends that *Bruen* overrules *Vongxay* by "undercut[ting] the theory or reasoning" underlying its decision. (Mot. 4 (quoting *Miller*, 335 F.3d at 900).) The Court disagrees.

First, by repeatedly cabining the protections of the Second Amendment to "ordinary, law-abiding citizens," the Supreme Court's Second Amendment jurisprudence indicates that regulations governing non-law-abiding citizens do not implicate *Bruen*, *Heller*, or *McDonald*. Having been convicted of First Degree Residential Burglary—a felony crime punishable by a term of imprisonment exceeding one year—Pugh is not a "law-abiding citizen" for these purposes.

Furthermore, although *Vongxay* predates *Bruen* by over a decade, nothing in *Bruen* indicates that the Ninth Circuit applied flawed reasoning when finding the felon-in-possession statute constitutional, and the two cases are certainly not "clearly irreconcilable." First, as discussed above, the Supreme Court clarified on numerous occasions that its holding should be limited to securing the Second Amendment rights of "ordinary, law-abiding citizens." Second, the Ninth Circuit in *Vongxay* did not apply the means-end scrutiny test that the Supreme Court decried in *Bruen*. Rather, it applied a historical analysis that determined "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citzen[ry],'" and that "the right to bear arms does not preclude laws disarming the unvirtuous citizens (*i.e.* criminals)." 594 F.3d at 1118 (alterations in original) (quoting Dan B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)).

The Court is therefore bound by the Ninth Circuit's holding that Section 922(g)(1) "does not violate the Second Amendment as it applies to . . . a convicted felon." *Id.* at 1117–18 ("Denying felons the right to bear arms is also consistent with the explicit purpose of the Second Amendment to maintain 'the security of a free State.'").

Therefore, rather than upending *Vongxay*, the Court finds that *Bruen* actually further reinforced the Ninth Circuit's holding in *Vongxay* that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Id.* at 1115. Just as the Ninth Circuit found in *Vongxay* that the appellant's reliance on *Heller* was misplaced, the Court finds here that Pugh's reliance on *Bruen* is similarly misplaced.

Finally, other courts within this district have repeatedly rejected the same argument that Pugh makes in this case. *See, e.g.*, *United States v. Martinez*, No. 22-cr-375-JFW (C.D. Cal. Feb. 22, 2023) (rejecting the argument that § 922(g)(1) is unconstitutional as applied to felons); *United States v. Bacchus*, No. 2:22-cr-450-SVW (C.D. Cal. Feb. 2, 2023) (same); *United States v. Smith*, No. 2-19-cr-505-JAK (C.D. Cal. Jan 19, 2023) (same); *United States v. Jacobs*, No. 2:22-cr-160-MEMF (C.D. Cal. Nov. 28, 2022) (same); *United States v. Ramos*, No. 2:21-cr-395-RGK (C.D. Cal. Aug. 5, 2022) (same); *United States v. Nevens*, No. 2:19-cr-774-DMG (C.D. Cal. Aug. 15, 2022) (same). The Court agrees with and adopts the reasoning of those district courts.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Dismiss. (ECF No. 26.)

**IT IS SO ORDERED.**

February 6, 2024

_____
            **OTIS D. WRIGHT, II
    UNITED STATES DISTRICT JUDGE**